UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SABRINA SOLOMON and
STANFORD SOLOMON,

　　　　Plaintiffs,

v.　　　　　　　　　　　　　　Case No. 8:24-cv-2650-VMC-NHA

AIG PROPERTY CASUALTY COMPANY,

　　　　Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Plaintiffs Sabrina and Stanford Solomon's Daubert Motion to Exclude Causation and Appropriateness of Treatment Opinions of Defendant's Expert, Dr. Richard Ofstein (Doc. # 50), filed on October 1, 2025. Defendant AIG Property Casualty Company responded on October 15, 2025. (Doc. # 53). For the reasons that follow, the Motion is denied.

**I.  Background**

Plaintiffs initiated this underinsured motorist benefits and loss of consortium case in state court in July 2024. (Doc. # 1-1). Plaintiff Sabrina Solomon was involved in a motor vehicle accident ("MVA") in April 2021 that left her with "a permanent injury to the body as a whole." (Id. at 2). After a non-diverse tortfeasor defendant was dismissed (Doc. # 1-

1

4), Defendant removed the case to this Court based on diversity jurisdiction. (Doc. # 1).

The case proceeded through discovery, and both sides disclosed expert witnesses. One of Defendant's expert witnesses is Dr. Richard Ofstein, a radiologist with over forty years' experience. (Doc. # 50-3). He is board certified in Diagnostic Radiology and has a Certificate of Added Qualifications in Neuroradiology. (Id. at 4). He is currently an Adjunct Assistant Professor of Radiology at the University of Utah and previously worked as an Assistant Clinical Professor of Radiology at the UCLA School of Medicine. (Doc. # 50-1 at 1). Additionally, Dr. Ofstein worked in private practice for most of his career. (Id.). He is "thoroughly familiar with the imaging findings seen in the setting of trauma. In most cases, these findings can be distinguished from findings related to normal aging and other nontraumatic disease processes." (Id.).

In reaching the opinions outlined in his report, Dr. Ofstein consulted the medical records for Plaintiff Sabrina Solomon that were provided to him, including numerous diagnostic images (MRIs and angiograms). (Id. at 1-2). Dr. Ofstein's report concludes with the following summary of his opinions:

There are well-known findings radiologists look for on diagnostic imaging in the setting of head trauma. Some of these findings are associated with long-term cognitive dysfunction and other neurological clinical findings. **The 5/11/2021 Brain MRI does not demonstrate findings supportive of a [traumatic brain injury ("TBI")]. The clinical presentation at the time of the 4/29/2021 [MVA] is not consistent with a TBI.**

There are also well-known findings radiologists look for on diagnostic imaging in the setting of spine and shoulder trauma. **There is no objective imaging evidence that Sabrina Solomon sustained injuries to her cervical or lumbar spine nor her shoulders from the 4/29/2021 MVA.** Specifically, she did not sustain traumatic disc protrusions, fracture, or other injuries to the spine. The diagnostic imaging finding of bilateral rotator cuff tears is not indicative of shoulder trauma. In fact, when combined with the clinical presentation and knowledge of the commonality of rotator cuff tears in an asymptomatic population, without a history of trauma, the diagnostic imaging strongly indicates that this pathology is not a result of the 4/29/2021 MVA.

**The surgeries Sabrina Solomon underwent, namely the left shoulder and lumbar spine surgeries, were not necessitated by the 4/29/2021 MVA.** The pathologic basis or clinical indication for the surgeries she anticipates will be performed in the future, namely right shoulder and cervical spine surgery are not related to injuries sustained on 4/29/2021.

The above opinions are based primarily on comprehensive diagnostic imaging, objective data. However, they are supported by and concordant with the clinical presentation at the time of the 4/29/2021 MVA. She literally and figuratively walked away from the accident. She did not request nor require medical attention at that time. In any other personal injury litigation, the fact that Sabrina Solomon did not suffer "bodily injury including a permanent injury to the body as a whole," as claimed, would be considered a blessing.

> The opinions stated above are to a reasonable degree of medical certainty, on a more probable than not basis.

(Doc. # 50-1 at 11) (emphasis added). Dr. Ofstein emphasized that Plaintiff Sabrina Solomon's brain imaging was "most consistent with, if not diagnostic for, an incidental cavernous angioma," rather than a TBI. (Id. at 3). As for her spine and shoulder injuries, Dr. Ofstein opines these were consistent with aging or "degenerative" changes or disease, rather than an acute trauma. (Id. at 3-4, 10-11). After his report was disclosed, Plaintiffs took the deposition of Dr. Ofstein. (Doc. # 53-2).

Now, Plaintiffs move to exclude Dr. Ofstein from testifying at trial. (Doc. # 50). According to them, "Dr. Ofstein is not qualified to give such opinions," "his opinions are not based on sufficient facts and data," and "his opinions are not based on a reliable scientific methodology." (Id. at 2). Defendant has responded (Doc. # 53), and the Motion is ripe for review.

## II. **Legal Standard**

"Federal law applies to the admissibility of expert testimony in this case." Magbegor v. Triplette, 212 F. Supp. 3d 1317, 1323 (N.D. Ga. 2016); see also Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1193 (11th Cir. 2010)

4

("Although the standards for finding causation are governed by Florida law, we apply federal law to determine whether the expert testimony proffered to prove causation is sufficiently reliable to submit it to the jury.").

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589–90. District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'"

Hendrix, 609 F.3d at 1194. The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony must show, by a preponderance of the evidence, that the testimony satisfies each requirement. Id.

## III. Analysis

Plaintiffs only challenge Dr. Ofstein's qualifications and methodology. (Doc. # 50 at 4-10). The Court addresses each in turn.

### A. Qualifications

The first question under Daubert is whether an expert is qualified to testify about the matters he or she intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject

matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citation omitted).

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Id. (citations and internal quotation marks omitted). The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

Plaintiffs argue that Dr. Ofstein is not qualified to give the opinions from his report. (Doc. # 50 at 4-5). According to them, "[a]lthough Dr. Ofstein might be qualified to give radiology opinions, i.e., what he sees on Plaintiff's diagnostic imaging, he is not qualified to give opinion testimony on the specific causation of injury that might arise as a result of a motor vehicle accident, nor the appropriateness or relatedness of any treatment incurred or to be incurred by Plaintiff" Sabrina Solomon. (Id. at 5).

The Court disagrees. There is no doubt that Dr. Ofstein, as a radiologist with decades of experience, is qualified to

7

testify about his review of Plaintiff Sabrina Solomon's radiological imaging. Contrary to Plaintiffs' argument, a radiologist may opine on the likely cause of an injury observed in radiological imaging, such as whether an injury results from an acute trauma or degeneration. Indeed, "[i]t is within the province of radiologists to view an MRI and differentiate between evidence of acute injury versus evidence of degeneration due to the aging process." Bostick v. State Farm Mut. Auto. Ins. Co., No. 8:16-CV-1400-VMC-AAS, 2017 WL 2959060, at *2 (M.D. Fla. July 11, 2017).

Furthermore, Dr. Ofstein made clear in his deposition that he was not opining on the medical appropriateness of Plaintiff Sabrina Solomon's spinal and shoulder surgeries. Rather, Dr. Ofstein clarified that he was "addressing . . . the relationship of the need for surgery and the accident at issue." (Doc. # 53-2 at 76:21-22). His opinion was that "the crash did not necessitate her left shoulder and lumbar spine surgeries" because Plaintiff Sabrina Solomon did "not suffer[] a traumatic injury on the date of the motor vehicle accident." (Id. at 76:24-77:9). Thus, Dr. Ofstein's opinion on the surgeries was appropriately limited to the fact that the injuries addressed by those surgeries were not caused by

8

the motor vehicle accident. This opinion falls within the expertise of a radiologist.

In short, Dr. Ofstein is at least minimally qualified to offer his opinions at trial. Demeritt v. Wal-Mart Stores E., LP, No. 6:20-cv-89-PGB-GJK, 2021 WL 2835363, at *2 (M.D. Fla. May 17, 2021) ("Plaintiff suggests in passing that Dr. Koenigsberg is unqualified to offer opinions on differential diagnosis or causation. . . . Dr. Koenigsberg is a board-certified radiologist. . . . He completed a residency and fellowships in radiology, and he has been a Medical Doctor for almost 40 years. The Court finds that Dr. Koenigsberg is sufficiently qualified to opine on radiology studies."). Plaintiffs' arguments primarily go to the weight of Dr. Ofstein's opinions and should be addressed through cross-examination at trial. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." Maiz, 253 F.3d at 666 (citations and internal quotation marks omitted)).

B. **Methodology**

The second question is whether an expert's methodology is reliable. "Exactly *how* reliability is evaluated may vary

9

from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and internal quotation marks omitted). The Court's analysis as to

10

reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Seamon, 813 F.3d at 988 (citation omitted).

According to Plaintiffs, Dr. Ofstein's methodology in reaching his opinions was unreliable. They complain that "Dr. Ofstein's opinions are not founded on any established scientific method" because "he solely relies on the deposition of the Plaintiff in performing his clinical correlation and coming to his opinions." (Doc. # 50 at 9-10). Plaintiffs also contend Dr. Ofstein's "opinions are not based on sufficient facts or data": "Dr. Ofstein's deposition testimony shows that his opinions on causation and relatedness or appropriateness of treatment were based only on him looking at the radiological studies and medical records from [Plaintiff Sabrina Solomon's] treating providers after the subject accident." (Id. at 6-7). Thus, in Plaintiffs' view, "Dr. Ofstein's opinion in this case lacks the proper informational foundation to opine on causation and relatedness or appropriateness of medical treatment." (Id. at 8).

Again, the Court disagrees. Dr. Ofstein used a trustworthy methodology in reviewing Plaintiff Sabrina Solomon's radiological images in reaching his conclusions.

11

"The methodology used by Dr. [Ofstein] is standard and consistent with the literature and methodology used by radiologists in the United States. It is within the province of radiologists to view an MRI and differentiate between evidence of acute injury versus evidence of degeneration due to the aging process." Bostick, 2017 WL 2959060, at *2; see also Ostroski v. United States, No. 06-80327-CIV, 2007 WL 9701868, at *2 (S.D. Fla. Aug. 23, 2007) ("Applying the relevant Daubert standards, it is clear that Dr. Elster applied the same methodology used by radiologists in everyday practice - he looked at the pertinent film and relied on a basic understanding of the nature of the Plaintiff's injury and the context in which it occurred to draw a well-reasoned conclusion."); Derochers v. Amica Mut. Ins. Co., No. 6:15-cv-2151-DCI, 2018 WL 1988861, at *5 (M.D. Fla. Feb. 1, 2018) ("The methodology Dr. Jenkins employed during his evaluation, especially his review of radiological films, appears to be sufficiently reliable in determining whether the changes to Plaintiff's cervical and lumbar spine were degenerative in nature, or the result of an acute event.").

The fact that Dr. Ofstein "did not review any of Plaintiff's medical records outside of the radiology reports produced by Plaintiff's treating physicians" does not render

12

his methodology unreliable. (Doc. # 50 at 6); see Ostroski, 2007 WL 9701868, at *2 ("The fact that [the expert radiologist] did not review Plaintiff's complete medical records does not preclude him from making this observation or go to the threshold admissibility of his opinion. In fact, it is consistent with the way that radiologists interpret films every day."). Dr. Ofstein's review of the radiological imaging, the radiology reports from Plaintiff Sabrina Solomon's treating physicians, as well as the police report from the accident and Plaintiff Sabrina Solomon's deposition, supports that he applied a sufficiently trustworthy methodology in reaching his opinions. See Demeritt, 2021 WL 2835363, at *3 ("Dr. Koenigsberg's review of Plaintiff's radiological films — coupled with his training and experience in reviewing similar films — is sufficiently reliable to support a determination that Plaintiff displayed the physical signs of degenerative disease. By extension, this methodology supports Dr. Koenigsberg's ultimate opinion that the changes to Plaintiff's spine and knees were degenerative in nature rather than the result of an acute trauma event (such as a fall).").

"Any claimed weakness in the factual basis for his conclusion in this regard goes at best to weight and

13

credibility, and can certainly be explored on cross examination." Ostroski, 2007 WL 9701868, at *2; see also Maiz, 253 F.3d at 666 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted). The Motion is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiffs Sabrina and Stanford Solomon's Daubert Motion to Exclude Causation and Appropriateness of Treatment Opinions of Defendant's Expert, Dr. Richard Ofstein (Doc. # 50) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 23rd day of October, 2025.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE